Carla D. Macaluso, Esq. (Bar ID #018141996)
JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, NJ 07922
(908) 795-5200
Attorneys for Defendants Verizon Wireless, Inc.,
Securitas Security Services, USA, Inc., and Thomas Kominek

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL ELSMAILY<br>793 Decker Place<br>Paramus, NJ 07652<br><br>Plaintiff,<br>vs.<br><br>VERIZON WIRELESS, INC., d/b/a<br>VERIZON<br>1 Verizon Way<br>Basking Ridge, NJ 07920<br><br>and<br><br>SECURITAS SECURITY SERVICES,<br>USA, INC., d/b/a SECURITAS<br>9 Campus Dr, Parsippany<br>New Jersey, 07054<br><br>and<br><br>THOMAS KOMINEK<br>1 Verizon Way<br>Basking Ridge, NJ 07920<br><br>Defendants. | Civ. Action No.<br><br>**NOTICE FOR REMOVAL OF CASE FROM THE SUPERIOR COURT OF NEW JERSEY, LAW DIVISION, SOMERSET COUNTY** |

TO: William T. Walsh, Clerk of Court
    USDC for the District of New Jersey
    Martin Luther King, Jr. Federal Bldg. & U.S. Courthouse
    50 Walnut Street
    Newark, NJ 07102

Timothy S. Seiler, Esq.
Karpf, Karpf & Cerutti, P.C.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020

Pursuant to 28 U.S.C. §§ 1331, 1441(c), and 1446, Defendants Verizon Wireless, Inc., d/b/a Verizon ("Verizon")[1], Securitas Security Services, USA, Inc., d/b/a Securitas ("Securitas"), and Thomas Kominek (collectively "Defendants") respectfully submit this Notice of Removal ("Notice") of a case from the Superior Court of New Jersey, Law Division, Somerset County, bearing Docket No. SOM-L-001367-22, and states as follows as grounds for removal:

1. On November 30, 2022, Plaintiff Michael Elsmaily ("Plaintiff") filed a civil action captioned <u>Michael Elsmaily v. Verizon Wireless, Inc., d/b/a Verizon, Securitas Security Services, USA, Inc., d/b/a Securitas and Thomas Kominek</u>, Docket No. SOM-L-001367-22 (the "State Action"), in the Superior Court of New Jersey, Law Division, Somerset County.

2. Securitas was served with the Summons and Complaint on December 5, 2022.

3. Verizon was served with the Summons and Complaint on December 8, 2022.

4. Defendant Mr. Kominek was served with the Summons and Complaint on December 8, 2022.

5. A true and correct copy of the Complaint in this matter is attached hereto as Exhibit A.

6. This action arises out of Plaintiff's claims in his Complaint of (1) unlawful discrimination in violation of the New Jersey Law Against Discrimination ("LAD"); and (2) unlawful discrimination in violation of 42 U.S.C. § 1981.

7. The Summons and Complaint constitute all pleadings, process, and other

---

[1] This Verizon entity is improperly plead as there is no such entity known as Verizon Wireless.

documents provided to Defendants in this action. The Complaint was the initial pleading received by Defendants setting forth the claims upon which Plaintiff's action is based.

8. This Notice is timely filed under 28 U.S.C. § 1446(b), because Defendants have effected removal within thirty (30) days of service/receipt of a paper from which it first could be ascertained that this action is removable.

9. Defendants have not filed an answer or other pleading in the Superior Court of New Jersey, or made any appearance or argument in connection with the State Action.

10. Removal is proper under 28 U.S.C. § 1441(a), because this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331, as this action involves claims that relate to the laws of the United States – specifically, 42 U.S.C. § 1981. (See Complaint at ¶¶ 1 and 9, and Count II).

11. In his Complaint, Plaintiff specifically alleges a claim under 42 U.S.C. § 1981, and asserts: "these actions by Defendants, premise upon Plaintiff's race, ancestry, and/or ethnic characteristics constitute unlawful discrimination in violation of 42 U.S.C. § 1981." (Complaint at ¶ 32).

12. Accordingly, the Complaint establishes that the matter is removable to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446.

13. To the extent any of Plaintiff's claims do not relate to 42 U.S.C. § 1981, this Court nevertheless has supplemental jurisdiction over those claims pursuant to 28 U.S.C. §§ 1367 and 1441(c).

14. Venue is proper in this Court.

15. Defendants submit this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff, including Plaintiff's failure to state any claims upon which relief may be granted.

16. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon all parties and filed with the Clerk of the Superior Court of New Jersey, Law Division, Somerset County.

17. By copy of this document and in accordance with the Certificate of Service, Defendants are providing notice to all Parties in this action of the filing of this Notice of Removal pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, Defendants respectfully requests that the within action, now pending in the Superior Court of New Jersey, Law Division, Somerset County, be removed to the United States District Court for the District of New Jersey.

> Respectfully submitted,
>
> JACKSON LEWIS P.C.
> 200 Connell Drive, Suite 2000
> Berkeley Heights, NJ 07922
> (908) 795-5200
>
> By: /s/ Carla D. Macaluso
> Carla D. Macaluso
> Attorneys for Defendants Verizon Wireless, Inc., Securitas Security Services, USA, Inc., and Thomas Kominek

Dated: January 6, 2023

4871-9227-4504, v. 1

# EXHIBIT A

**KARPF, KARPF & CERUTTI, P.C.**
Timothy S. Seiler, Esq. (081452013)
Ari R. Karpf, Esq. (021842003)
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
P - (215) 639-0801
F - (215) 639-4970

| | |
|---|---|
| MICHAEL ELSMAILY<br>793 Decker Place<br>Paramus, NJ 07652<br><br>    Plaintiff,<br><br>  v.<br><br>VERIZON WIRELESS, INC., d/b/a<br>VERIZON<br>1 Verizon Way<br>Basking Ridge, NJ 07920<br>  and<br>SECURITAS SECURITY SERVICES,<br>USA, INC., d/b/a SECURITAS<br>9 Campus Dr, Parsippany<br>New Jersey, 07054<br>  and<br>THOMAS KOMINEK<br>1 Verizon Way<br>Basking Ridge, NJ 07920<br><br>    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>SOMERSET COUNTY LAW DIVISION<br><br>CIVIL ACTION<br><br>DOCKET NO.:<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, Michael Elsmaily (*hereinafter* referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

### I. Introduction

1. Plaintiff has initiated this action to redress violations by Verizon Wireless, Inc., Securitas Security Services, USA, Inc., and Thomas Kominek for violations of <u>both</u> state and

federal law(s), including 42 U.S.C. § 1981 and the New Jersey Law Against Discrimination ("NJ LAD"). The gravamen of Plaintiff's claims is that he was unlawfully terminated from his employment. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## II. Parties

2. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

3. Plaintiff is an adult who resides at the above-captioned address.

4. Verizon Wireless, Inc. (hereinafter, "Defendant Verizon") is an international corporation providing technology and wireless services throughout the United States and internationally. Defendant Verizon's regional operational headquarters is in Basking Ridge, New Jersey at the above-captioned address.[1]

5. Securitas Securities Services USA, Inc. (hereinafter, "Defendant Securitas") is a nationwide security company primarily engaging in contracts throughout the United States to provide third-party businesses (such as Defendant Verizon) with security personnel. Defendant Securitas is headquartered in Parsippany, New Jersey at the above-captioned address.

6. Thomas Kominek (hereinafter, "Defendant Kominek") is a Senior Manager of Security Operations employed by Defendant Verizon at Defendant Verizon's Basking Ridge (NJ) location.

---

[1] There are in excess of a dozen entities registered as operating from the Basking Ridge, New Jersey location doing business under various interations of the "Verizon" name. For notice purposes only, Plaintiff identifies herein that he may seek leave to amend numerous entities following discovery in this case.

2

7.     At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## IV.     Factual Background

8.     The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

9.     Plaintiff is a Lebanese male, and he is Middle Eastern. This is Plaintiff's "race" and "ancestry," protected under 42 U.S.C. § 1981.[2]

10.     Plaintiff was hired by Defendant Securitas and Defendant Verizon in or about mid-April of 2022 (effective on or about April 15, 2022).

11.     Plaintiff was a full-time employee, hired by Defendant Securitas to be placed (and work) within Defendant Verizon. While at Defendant Verizon, Plaintiff had to follow and abide by Defendant Verizon policies, rules and guidelines.

12.     At all relevant times during his relatively short tenure, Plaintiff worked as an Assistant Director of Security at 1 Verizon Way, Basking Ridge, New Jersey 07920.

13.     Defendant Kominek was at all relevant times during Plaintiff's period of employment a direct employee of (and employed by) Defendant Verizon. From in or about April of 2019 through December of 2021, Defendant Kominek was a Senior Investigator for Defendant Verizon; and as of in or about December of 2021, Defendant Kominek had become Defendant Verizon's Senior Manager of Security Operations.

---

[2] *See e.g. Mahmoud Sayed-Aly v. Tommy Gun, Inc.*, 170 F. Supp. 3d 771, 777 (E.D. Pa. 2016)(explaining that other courts, the Supreme Court, and this court conclude that being Middle Eastern *is race and ancestry* protected under §1981, which is different than national origin).

3

14. Defendant Kominek is a Caucasian male, who in addition to continually abusing his authority, has exhibited overt racism.

15. Although Plaintiff was placed at Defendant Verizon, Defendant Verizon's oversight over Plaintiff was significant in that both Defendant Securitas and Defendant Verizon were his "joint" employers.[3]

16. While in the employ of Defendants, Plaintiff was directly supervised by Joseph Ayoubi (a Director of Security employed through Defendant Securitas). Ayoubi was exclusively employed by Defendant Securitas.

17. Defendant Kominek has (and upon information and belief continues) to dislike minorities such as those who are Middle Eastern.

18. In addition to abusing his authority and being overtly racist, Defendant Kominek exhibits a pattern and *modus operandi* of fabricating false allegations to cause someone he dislikes (even if for racial reasons) to be removed, investigated or terminated.

19. Shortly into Plaintiff's hire (and within less than a month of Plaintiff working at Verizon's headquarters), Defendant Kominek rescinded Plaintiff's access to the Verizon building and caused him to be suspended. In particular, Plaintiff had learned that he was accused of sexual harassment of someone he – upon the best of his recollection – may have worked with or around only a single day for a short period of time.

20. The Director and Regional management of Defendant Securitas had confirmed: (a) the female did not make or intend to make any report of sexual harassment; (b) the female did not

---

[3] The laws Plaintiff is suing under herein permit him to sue Defendants regardless of whether either was an "employer," as joint-employer status is not required to be demonstrated. *See e.g. CPM Consulting LLC v. Capsugel, US LLC*, 2021 U.S. App. LEXIS 29275, *5 (3d Cir. 2021)("For independent contractors, N.J. Stat. Ann. § 10:5-12(l) makes it unlawful for anyone to refuse to "contract with" or "otherwise do business with" them "on the basis of the[ir] race, . . . national origin," or other protected characteristics. *Rubin v. Chilton*, 359 N.J. Super. 105, 819 A.2d 22, 25 (N.J. App. Div. 2003) (explaining that independent contractors can bring LAD claims under § 10:5-12(l))."). Jurisprudence interpreting 42 U.S.C. § 1981 prohibits discrimination in an employment or independent-contractor setting as well.

4

believe she was sexually harassed; (c) any feigned claim or investigation was initiated at the behest of Defendant Kominek; and (d) Defendant Securitas on-site and regional management determined the allegation about Plaintiff to be unfounded and/or uncorroborated.

21. Despite the foregoing, Plaintiff was not permitted to ever resume working for a Defendant Verizon location by Defendant Kominek.

22. There is extremely substantial evidence that: (a) Plaintiff was the subject of a false allegation and investigation; and (b) he was not permitted to resume working for Defendant Verizon for discriminatory reasons (because of his race and/or national origin).

23. The evidence referenced above includes but is not limited to:

   (1) The attached sworn declaration, attached hereto as "Exhibit A," from Joseph Ayoubi. Therein, the former Director of Defendant Securitas confirms ongoing and blatant racism by Defendant Kominek against many employees with a "*modus operandi*" of making up false allegations to remove them or prohibit their association with Defendant Verizon;

   (2) Defendant Kominek was overheard by Plaintiff saying "fucking Arabs and Middle Easterners are nothing but problems."

   (3) Defendant Kominek has made numerous racially-motivated (and derogatory) comments about minorities.

   (4) Plaintiff did nothing wrong, but was not even liked based upon *appearance* by Defendant Kominek upon hire and commencement of employment.

24. The Declaration from Ayoubi is hereby incorporated in this Complaint by reference to provide context for an extreme pattern racism by and at the direction of Defendant Kominek.

25. Defendant Securitas has and continues to ratify, acquiesce and support all decisions of Defendant Verizon (even if discriminatory or retaliatory) because Defendant Securitas enjoys substantial revenue on a nationwide basis from Verizon contracts.

26. Plaintiff in essence worked for Defendants for less than 2 weeks, from on or about April 15, 2022 through on or about April 25, 2022 (his date of removal). After Plaintiff was

discriminatorily removed from Defendant Securitas, he was not placed by Defendant Securitas any Verizon site or other third-party site.

**Count I**
**Violations of the New Jersey Law Against Discrimination**
(Racial, Ancestral, National Origin Discrimination – Wrongful Removal / Termination)
- Against All Defendants -

27. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

28. Plaintiff was subjected to the following adverse actions for which he seeks relief herein:

    (a) A false investigation;

    (b) Suspension and removal from work;

    (c) Removal and termination from Verizon assignments or work; and

    (d) Non-placement by Defendant Securitas at other third-party sites in similar, comparable role (or for that matter, any role). This particular adverse action (in subpart d) is only against Defendant Securitas.

29. These actions by Defendants, premised upon Plaintiff's race, ancestry, national origin, and/or ethnic characteristics constitute unlawful discrimination in violation of the New Jersey Law Against Discrimination.[4]

---

[4] Defendants Securitas and Verizon were properly Plaintiff's joint employers(s). But the NJ LAD equally prohibits discrimination against employees and independent contractors (regardless of joint employment). *See e.g. CPM Consulting LLC v. Capsugel*, US LLC, 2021 U.S. App. LEXIS 29275, *5 (3d Cir. 2021)("For independent contractors, N.J. Stat. Ann. § 10:5-12(l) makes it unlawful for anyone to refuse to "contract with" or "otherwise do business with" them "on the basis of the[ir] race, . . . national origin," or other protected characteristics. *Rubin v. Chilton*, 359 N.J. Super. 105, 819 A.2d 22, 25 (N.J. App. Div. 2003) (explaining that independent contractors can bring LAD claims under § 10:5-12(l)).").

## Count II
### Violations of 42 U.S.C. § 1981
(Racial, Ancestral, National Origin Discrimination – Wrongful Removal / Termination)
- Against All Defendants -

30. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

31. Plaintiff was subjected to the following adverse actions for which he seeks relief herein:

> (a) A false investigation;
>
> (b) Suspension and removal from work;
>
> (c) Removal and termination from Verizon assignments or work; and
>
> (d) Non-placement by Defendant Securitas at other third-party sites in similar, comparable role (or for that matter, any role). This particular adverse action (in subpart d) is only against Defendant Securitas.

32. These actions by Defendants, premised upon Plaintiff's race, ancestry, and/or ethnic characteristics constitute unlawful discrimination in violation of 42 U.S.C. § 1981.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered discrimination/retaliation at the hands of Defendants until the date of verdict;

C. Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount determined by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate, including but not limited to, emotional distress and/or pain and suffering damages (where legally permitted);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable state law;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable state law; and

G. Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Timothy S. Seiler, Esq. (081452013)
Ari R. Karpf, Esq. (021842003)
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: November 29, 2022

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

**KARPF, KARPF, & CERUTTI, P.C.**

By: _____
Timothy S. Seiler, Esq. (081452013)
Ari R. Karpf, Esq. (021842003)

## RULE 4:5-1 CERTIFICATION

1. I am licensed to practice law in New Jersey, and I am responsible for the above-captioned matter.

2. I am aware of no other matter currently filed or pending in any court in any jurisdiction which may affect the parties or matters described herein.

**KARPF, KARPF, & CERUTTI, P.C.**

By: _____
Timothy S. Seiler, Esq. (081452013)
Ari R. Karpf, Esq. (021842003)

## DESIGNATION OF TRIAL COUNSEL

Timothy S. Seiler, Esquire and Ari R. Karpf, Esquire, of the law firm of Karpf, Karpf, & Cerutti, P.C., are hereby designated trial counsel.

**KARPF, KARPF, & CERUTTI, P.C.**

By: _____
Timothy S. Seiler, Esq. (081452013)
Ari R. Karpf, Esq. (021842003)

# Exhibit A

## DECLARATION OF JOSEPH AYOUBI

1. I, Joseph Ayoubi, am an adult individual. I make this Declaration to the best of my memory and recollection, based upon personal observations, discussions and experiences, and knowing this Declaration may be utilized in a single lawsuit or series of lawsuits. Thus, I also make this Declaration under penalties of perjury and false swearing.

2. I was employed by Securitas Security Services USA, Inc. ("Securitas"). In this capacity, I was physically employed at the corporate headquarters of Verizon in New Jersey (and in particular, at its Basking Ridge, New Jersey location). I was at all times a Securitas employee, although I provided services and oversight to ensure protection and security at Verizon's office(s). It was typical for Securitas to contract with third parties such as Verizon to provide security services.

3. While working for Securitas, I was employed as the Director of Security (reporting to regional management). I was responsible for ensuring the safety and security of thousands of Verizon employees at the Basking Ridge, New Jersey location. I oversaw supervisory and non-supervisory security personnel employed by Securitas. To the best of my recollection, I had been at the Basking Ridge location from in or about October of 2021 through in or about April of 2022 (when I resigned).

4. Before joining Securitas, I had significant experience and credentials with respect to security having worked previously in law enforcement and in security roles during my career.

5. I had substantial interaction with Thomas Kominek ("Kominek"), an employee of Verizon (at the same location as me). Kominek was initially considered to be an investigator for Verizon and then in 2022 I believe he was considered to be a Senior Manager of Security Operations. Kominek is a Caucasian male.

6. Kominek's involvement with Securitas was extremely unusual; and frankly, overbearing. Instead of focusing on his own Verizon responsibilities, he functioned in almost every respect as if he were the head manager of Securitas. Kominek would: (a) continually check on us and our employees; (b) scrutinize anything we did; (c) continually ask questions about employees, staffing, and other security matters; and (d) he (as explained more below) determined who from Securitas he would keep, remove, have transferred, or cause to be terminated (even if indirectly). And Securitas, in my opinion, agreed and/or acquiesced to whatever Kominek wanted to do because Securitas wanted to protect its relationship with Verizon as a whole since Securitas was contracted for work with Verizon all over the United States. He used CCTV to monitor Securitas employee's day to day actions. He ordered Securitas employees to do the same and monitor their coworkers.

7. I personally formed the opinion that Kominek is an overt racist towards non-Caucasian people in general. For example, Basking Ridge is a relatively affluent area. But Securitas doesn't pay exceedingly high (and typically only in the range of $15.00 - $16.00 per hour) for security personnel. I would estimate that in excess of 80% (or more) of our applicants for security jobs were African American (and minorities), despite the specific demographics of our physical geographic site (area). When a Caucasian employee was hired, Kominek would see them, say hello, be pleasant, and seemed enthusiastic or pleased. However, the majority of hires were African American (or minorities). In my own office, Kominek asked me why we are hiring so many people of a "different skin color" and why "we have so many blacks." I told Kominek that if they show and do a good job at work, "skin color shouldn't matter" to any of us. And I explained that most of our applicants are black or minorities. He stated when he was Securitas Manager, he wouldn't even interview a candidate if they were not wearing a suit jacket. But now I was hiring candidates who showed up in jeans lowered beyond their belt line. He made a statement that we were hiring too many employees from the ghetto. I reported this to Lisa Albert and Keith Marrano at the Securitas branch office. He shook his head in disgust and left my office.

8. Having worked with Kominek personally, I also formed the opinion that he was dishonest and had a reputation for dishonesty within the organization. By this, I mean that he would exaggerate, manipulate or makeup accusations about employees of Securitas (including me) that were blatantly false to achieve goals (or to indirectly adjust Securitas staffing). I construed this to be his *modus operandi* in controlling who worked for or at Verizon from Securitas.

9. Michael Elsmaily ("Elsmaily") became the Assistant Director of Security in the spring of 2022. I overlapped him for a very short period of time. I resigned within roughly the month that Elsmaily became employed with Securitas.

10. It was known that Elsmaily is Middle Eastern, and he objectively appears of this ancestry or ethnicity. Without any knowledge of Elsmaily's abilities, experience, performance, or work history, Kominek had asked why Elsmaily was hired as an Assistant Director. Kominek seemed very bothered based solely on the appearance of Elsmaily. Believing Kominek was racially biased from prior discussions, I vouched for Elsmaily as a good hire who would do well and potentially move into my role when I exit Securitas. Nonetheless, I took away from our discussion that Kominek did not like Elsmaily solely based upon his Middle Eastern appearance.

11. Shortly after Elsmaily's hire, I learned that Kominek had Elsmaily's security / building access canceled and/or revoked. Elsmaily was also suspended in the same month in which he was hired. Kominek had caused Elsmaily to be suspended and denied access claiming that Elsmaily had engaged in sexual harassment.

12. Based upon an investigation, it was revealed that nobody intended to report Elsmaily for sexual harassment, the individual at issue did not believe Elsmaily sexually harassed her, the accusation against Elsmaily was unfounded and/or uncorroborated, and it appeared to be Kominek who initiated such a claim. This was confirmed by Securitas regional management.

13.     I would learn directly from Elsmaily that even though he was vindicated of any alleged sexual harassment that he was still not permitted to resume working at the Basking Ridge, New Jersey (Verizon building). I learned this directly from Elsmaily because I was out for a medical procedure (as a result of my resignation). Kominek then claimed that Elsmaily had cursed him out to a security officer the day he was not permitted on site. This was only brought to our attention after Elsmaily was cleared of sexual harassment. A day later or so Kominek claimed I cursed him out. Securitas had me work out of the branch office until my resignation date.

14.     Elsmaily contacted me and inquired if I would be willing to talk with an attorney he was contacting for discrimination. I agreed to so because I whole-heartedly believe that Elsmaily was discriminated against. Additionally, Elsmaily very emotionally had reported to me that he heard Kominek make a discriminatory comment to the effect of fucking Arabs and Middle Easterners are nothing but problems. Based on my discussions with Kominek, I could easily expect this type of statement from him.

15.     I ultimately resigned from Securitas as a result of actions and conduct by Kominek after being very vocal about what I perceived to be very discriminatory behavior that was being unmitigated despite my vocalized concerns. Some additional examples follow below.

16.     There was a woman named Rebekah Seif ("Rebekah") working for Securitas. She worked in a guard booth on her own. This is the type of booth you see wherein a security guard checks people in while driving on a road or driveway. It is a standalone structure within a road entrance. She did not enter Verizon buildings or facilities or work with or around Verizon employees. She arrived at work, went straight to the guard booth, and when she left work, she exited the guard booth and vacated the premises (all without ever accessing, entering or exiting any Verizon buildings). She was a model security guard who worked very hard and always had a professional and pleasant demeanor. Her entire security role was that of redirecting non-Verizon employees who inadvertently would come through the employee entrance (where her booth was located) to enter through a different (main, non-employee) entrance to the Verizon building.

17.     Rebekah identified that she suffered from numerous physical and mental-health problems. She brought medical documentation. And she brought a service dog in the booth with her, which objectively appeared to be for her disabilities. After review from Securitas, she was approved for the accommodation as it was clearly for her disabilities, no burden, and very easy to accommodate. She also brought in a crate for the dog, as the dog impacted nobody.

18.     Kominek intervened, in my view, very inappropriately (and discriminatorily). Rebekah expressed concerns to me that Kominek had: (a) questioned her about her disabilities; (b) questioned her about her medical conditions; and (c) was very rude about her need for the medical accommodation. Kominek later told me he was not fucking allowing any dog; and as a result, Rebekah was only permitted to have the dog for approximately 1 day due to Verizon's rejection of the accommodation. Kominek also referenced that Rebekah was a Middle Easterner in our discussions about the accommodation issue; and when I said she is not Middle Eastern, he said if

you are married to a Middle Easterner then you are Middle Eastern. Kominek knew that Rebekah was married to a Securitas employee named Mohammed Seif ("Mohammed").

19. Kominek had responsibility over 3 physical areas or premises on behalf of Verizon. Specifically, he oversaw security or investigation within: (1) the Verizon Headquarters (in Basking Ridge); (2) the Verizon Aviation Hangar (used for Verizon transportation); and (3) the Ridge Hotel (used for Verizon employees).

20. Mohammed worked at Verizon's headquarters in Basking Ridge, New Jersey. He began working as a Securitas employee in mid-2021; and he was transferred from Verizon's headquarters to the Morristown Municipal Airport (and Verizon's hangar). When I was still working as the Director of Securitas, I formed the opinion that for several reasons Kominek was trying to find excuses to get rid of Mohammed or terminate him.

21. Following my resignation, I would later learn that Mohammad was accused of sleeping on his shift and not permitted to continue working for any Verizon locations. I was no longer the Director (or working for Securitas at this time), but these types of accusations are consistent with Kominek's *modus operandi*.

22. To give one more example, there was a very good long-term employee named Mauricio Badella. Badella worked for Securitas for many years. Badella was dependable, responsive and very hard working. He was one of our most reliable employees and willing to work virtually anywhere or any shift(s). Badella had shared that Kominek would at times make negative comments about his accent. Kominek claimed Badella acted inappropriately; and despite an investigation finding no wrongdoing by Badella, Kominek nonetheless prohibited Badella from working on Verizon premises.

23. I was always extremely professional. However, I also would not tolerate any type of discrimination in the workplace. I believed Kominek was a blatant racist and discriminatory. As a result, I expressed and escalated numerous concerns of racism and the denial of Rebekah's medical accommodation(s) to my management and human resources. I believe Securitas corporate tolerated Kominek to avoid negatively impacting its relationship with Verizon all over the United States. I did not witness any mitigation, remediation, or meaningful investigation of Kominek by Securitas.

24. Kominek knew that I was in essence sounding the alarm on his abuses and overstepping. Consistent with his typical *modus operandi*, Kominek made a false accusation that I cursed at him (and engaged in misconduct). He was attempting to get me surreptitiously removed as a director for directly and indirectly opposing his discriminatory actions and for reporting his impropriety. In light of neither Verizon or Securitas doing anything about the problems with Kominek, I was not willing to risk my career and reputation due to more false accusations that were sure to come. I thus resigned and left Securitas in its entirety by mid-April of 2022.

25.  I have only provided some examples of my observations, experiences, and communications about matters within Securitas and Verizon. The above is not intended to serve as an all-inclusive list. I will provide more details, examples, and elaboration if needed. But I am providing this Declaration because what happened at the direction of Kominek makes me disgusted and needs to be taken seriously for the first time.

*Joseph Ayoubi*
Joseph Ayoubi

Date: 11/28/2022